UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JAMES WILSON MUNCY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-24-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Plaintiff James Wilson Muncy brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Muncy's application for disability insurance benefits (DIB) and supplemental security income (SSI). The Court, having reviewed the record and for the reasons set forth herein, will deny Muncy's Motion for Summary Judgment, [R. 12], and grant that of the Commissioner, [R. 13].

I

Muncy filed applications for DIB and SSI on July 29, 2010. [Transcript (Tr.) 83-86]. He alleges a disability beginning on January 1, 2009, due to lower back and neck pain, COPD and bronchitis, and depression and anxiety. [Tr. 11]. Muncy's applications were denied initially on December 29, 2010 [Tr. 22-32] and upon reconsideration on May 23, 2011. [*See* Tr. 11, 51]. Subsequently, at Muncy's request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Donald A. Rising on May 22, 2012. [Tr. 502-34]. During the hearing, the ALJ heard testimony from Muncy and

1

vocational expert (VE) Jo Ann Bullard. [*Id*.] Muncy, who was forty-eight years old at the time of the hearing, has a tenth grade education, [Tr. 83, 508], and he has past relevant work experience as a maintenance worker. [Tr. 507]. The VE testified that Muncy could no longer perform that work, but testified that there are jobs that exist in significant numbers in the national economy that Muncy could perform, and the ALJ accepted that testimony. [Tr. 531-33].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

In this case, at Step 1, the ALJ found that Muncy has not engaged in substantial gainful activity since February 17, 2010, the alleged onset date. [Tr. 11]. At Step 2, the ALJ found that Muncy's discogenic and degenerative disorders of the back, his COPD, and his borderline intellectual functioning constituted severe impairments. [*Id*.] At Step 3, the ALJ found that Muncy's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 16]. At Step 4, the ALJ determined that Muncy had the residual functional capacity to perform sedentary work with additional limitations, [Tr. 17], and found that he is unable to perform any past relevant work, [Tr. 18]. However, at Step 5 the ALJ relied on the testimony of the VE to find that, based on Muncy's residual functional capacity (RFC), there are jobs that exist in significant numbers in the national economy that Muncy could perform. [Tr. 19-20]. Accordingly, on February 23, 2011, the ALJ issued an unfavorable decision, finding that Muncy was not disabled and was therefore ineligible for DIB and SSI. [Tr. 20]. The Appeals Council declined to review the ALJ's decision on December 5, 2012, [R. 9-1 at 2; *see* Tr. 5], and Muncy now seeks judicial review in this Court.

II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a

zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (internal quotation marks and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

Citing various medical records, treating physician records, and his own testimony, Muncy broadly contends that substantial evidence does not support the ALJ's determination that he is not disabled.  [Pl.'s Mot. Summ. J., R. 9-1].  He also ostensibly asserts that substantial evidence does not support the ALJ's RFC determination.[2]  [*Id.*]

---

[2] Muncy's brief identifies the sole issues before the court as follows: "(I) The Defendant's determination that the Plaintiff is not disabled, [sic] is not supported by substantial evidence; [and] (II) The Defendant failed to prove that the Plaintiff has the residual functional capacity to perform a significant range of light work." [Pl.'s Mot. Summ. J., R. 9-1 at 2]. The Commissioner bears the burden of proving that there are a significant number of jobs in the national economy that a claimant can perform. *E.g.*, *French v. Astrue*, 2009 U.S. Dist. LEXIS 4043, *22, 2009 WL 151525 (E.D. Ky. Jan. 20, 2009) (citing 20 C.F.R. § 404.1520; *Varley v. Sec'y Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987)). Although Muncy alludes to the Commissioner's burden of proof in his second argument, nowhere in his brief does he suggest that the Commissioner failed to prove that there are a significant number of jobs in the national economy that Muncy can perform. Instead, his language focuses on the ALJ's RFC finding itself. Moreover, Muncy cites no authority for any burden-of-proof argument; rather, the only legal authorities he cites relate to substantial evidence. As such, the Court construes his argument as one challenging whether substantial

4

A

Muncy broadly claims that, contrary to the ALJ's decision, his medical records support a finding that he is disabled. Muncy contends that the ALJ's RFC determination, as well as the general conclusion that Muncy is not disabled, are not supported by substantial evidence. Ostensibly, he also argues that the ALJ improperly rejected the opinion of his treating physician, Dr. Gregory Dye, without giving "good reasons" for doing so.[3]

1

Muncy argues that substantial evidence does not support the ALJ's RFC determination and, generally, the ALJ's decision that Muncy is not disabled. [Pl.'s Mot. Summ. J., R. 9-1 at 3]. In his brief, he details his treatment history with Doctors Dye, Paliwal, Karelis, and Jackson from December 2007 through May 2012. [*Id.*]

After recounting Muncy's medical history in great detail, [Tr. 11-15], ALJ Rising concluded that Muncy has the residual functional capacity to perform sedentary work with certain additional limitations. [Tr. 17]. This conclusion is in accordance with the law and is supported by substantial evidence. *E.g.*, *Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994). The following evidence supports ALJ Rising's decision:

> (1)     As to Muncy's back pain, the most recent cervical and lumbar MRIs included in the record, dated February 2011, indicate that Muncy has degenerative disc disease; however, there was only "mild to moderate bulging" of the discs and no indicia of soft tissue swelling [Tr. 284,

---

evidence supports the ALJ's RFC finding.
[3] Again, Muncy's broad and generalized identification of his arguments requires the Court to construe the legal bases for his claims. After arguing that "the Medical Evidence consistently supports Mr. Muncy's claim for disability," Muncy's brief reiterates the course of his treatment with Dr. Dye, his treating physician, as well as prior treating physicians and specialists. The Court construes this as an argument that the ALJ improperly rejected his treating physician's opinion without providing "good reasons" for doing so in reaching an RFC determination and an ultimate decision on Muncy's disability.

335-36]. Muncy has not been required to undergo surgery, and his treatment notes as recent as April 2012 reflect that his pain has been well-managed by oral analgesics. [*E.g.*, Tr. 468, 436]. Although Muncy states in his testimony and his brief that he was prescribed a cane or a walker for his back pain in May 2012, [Pl.'s Mot. Summ. J., R. 9-1 at 4], the transcript is devoid of any medical records relating to such a prescription.

(2)  An April 21, 2011 CT Scan of the chest – the most recent one contained in the record – was negative and indicated no evidence of lung obstruction or enlarged lymphadenopathy. [Tr. 441]. While Muncy complains of a chronic cough and shows signs of significant emphysema, [*e.g.*, Tr. 438], his treatment notes indicate that this is due in large part to his continued two-pack-a-day smoking habit, against his doctors' advice. [*E.g.*, Tr. 438, 343-44].

(3)  After reviewing Muncy's medical records, Dr. Jack Reed opined that Muncy could perform sedentary work. [Tr. 363-69]. Citing treatment notes from Muncy's March 2011 visits to Kentucky Pain Management Clinic which indicated strength in all extremities and minimal bulging of discs, [Tr. 486-88], Dr. Reed opined that Muncy could only occasionally climb stairs, stoop, kneel, crouch, or crawl and could never climb ladders. [Tr. 364-65]. However, he opined that Muncy's condition did not preclude him from frequently lifting 10 pounds and standard or walking for about 6 out of 8 hours in the workday. [Tr. 364]. Dr. Reed also opined that objective medical records regarding Muncy's neuropathy and strength suggest that Dr. Dye's opinion was unduly restrictive. [Tr. 368].

(4)  The medical evidence in the record relating to mental health treatment is minimal: his first visit to Cumberland River Comprehensive Care for mental health treatment was on February 28, 2012, approximately four months before the hearing. [Tr. 390]. The record demonstrates that his mood disorder is related to his physical condition and pain. [*E.g.*, Tr. 355, 399, 400, 403, 416, 523]. Doctors Vanderplate and Demaree evaluated Muncy's mental residual functional capacity and both opined that he did not meet the requirements of a Listing and that his anxiety and mood disorder did not amount to a severe mental impairment [Tr. 30-31; Tr. 345-62]. According to medical records and Muncy's testimony at the hearing, however, medications and memory techniques have improved his mental health and ability to cope with anxiety. [*E.g.*, Tr. 405, Tr. 524].

(5)  In his hearing and his pre-hearing assessments, Muncy indicated that he fixes sandwiches, drives, takes out the trash, attends to his personal

6

care, watches TV, and does laundry when his sister-in-law is unable to assist him. [Tr. 361, 525-26].

In light of the foregoing, and despite Muncy's extensive medical history, there is substantial evidence in the record to support the ALJ's decision that Muncy is not totally disabled, but retains the residual functional capacity to perform sedentary work. Moreover, ALJ Rising properly considered all of the relevant evidence in the record in assessing Muncy's RFC. [Tr. 18-20; *see* Tr. 11-15]. This Court's independent review finds that ALJ Rising's RFC determination, as well as his ultimate conclusion that Muncy is not disabled, was reasonable and supported by substantial evidence from the record.

2

Muncy also ostensibly argues that ALJ Rising improperly rejected the opinion of his treating physician, Dr. Gregory Dye, without giving "good reasons" for doing so. Under 20 C.F.R. § 404.1527(d)(2), a treating source's opinion on the issues of the nature and severity of a claimant's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). As part of this so-called "treating physician" regulation, an ALJ is required to give "good reasons" for not giving weight to opinions from the treating physician in a disability determination. 20 C.F.R. § 404.1527(d)(2). The purpose of this requirement is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-

33 (2d Cir. 2004)); *see also Gayheart v. Comm'r of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).

Dr. Dye is Muncy's treating physician. [Tr. 510-11]. After Muncy's initial visit on February 4, 2011, [Tr. 343], Dr. Dye diagnosed Muncy with advanced COPD, chronic hypertension, as well as chronic back pain. [Tr. 343-44]. He referred Muncy to a pain center for his chronic pain. [*Id*.] About two months after Muncy's initial visit on April 11, 2011, Dr. Dye completed a functionality assessment for Muncy, opining that he was "totally disabled from gainful employment." [Tr. 338-39]. That same date, Dr. Dye's treatment notes report that Muncy was demonstrating altered gait, decreased range of motion, and clear lungs. [Tr. 443].

As an initial matter, Dr. Dye's conclusion about Muncy's functionality can hardly be considered a medical opinion, but is instead a determination of disability, which is reserved to the Secretary. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (citing 20 C.F.R. § 404.1527(e)(1)); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."). As a result, "no special significance will be given to opinions of disability, even if they come from a treating physician." *Id*. (citing 20 C.F.R. § 404.1527(e)(3) (2006); SSR96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34471, 34473 (Soc. Sec. Admin. July 2, 1996)) (internal quotes omitted).

Even though a treating physician's opinion on an issue reserved to the Commissioner does not receive controlling weight, the ALJ must still "explain the consideration given to the treating source's opinion(s)." *Id*. (citing SSR 96–5: Policy

8

Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed.Reg. at 34474). ALJ Rising identified several reasons for declining to adopt the assessment from Dr. Dye. First, he pointed out that the opinion was offered after a mere three encounters with Muncy. [Tr. 18]. The record confirms that Muncy's initial screening was on February 4, 2011, and his next appointment on March 9 related to a pulmonary issue. [Tr. 343-44]. The functionality assessment was dated April 11, 2011 and took place after only about two months of a treating relationship. [Tr. 338-39]. Second, ALJ Rising noted that the opinion was premised on Muncy's COPD and back pain symptoms – but Dr. Dye had already referred Muncy's back pain issues to a specialist. [Tr. 18]. Indeed, according to his treatment notes from Muncy's initial appointment, Dr. Dye informed Muncy that he planned to make such a referral for pain management. [Tr. 343]. Finally, Muncy testified that he provided Dr. Dye with the responses reflected on the form. [Tr. 18; Tr. 517, 519-20]. During his testimony, Muncy stated that he took the assessment form directly to Dr. Dye, rather than sending it to the doctor through his counsel. [Tr. 517]. When asked who contributed the responses on the functionality assessment, Muncy indicated that they were his own answers – not those of his physician. [Tr. 519-20].

     ALJ Rising's decision also indicates that Dr. Dye's opinion of total disability is inconsistent with objective medical evidence in the record. As set forth in detail above, Muncy's medical records demonstrate that his back pain, his COPD, and his mood disorder have been adequately controlled by medication and support a finding of sedentary exertion rather than total disability.

9

ALJ Rising explained, with specific examples and direct citation to the record, that he gave little weight to Dr. Dye's opinion because it was conclusory, lacked credibility, and was inconsistent with the objective medical evidence in the record. [Tr. 18]. This explanation is sufficiently detailed to enable Muncy to understand why his treating physician's opinion was granted little weight and also to permit judicial review. *Wilson,* 378 F.3d at 544 ; *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). Further, due to the nature of Dr. Dye's opinion and the substantial evidence of the record, the ALJ was justified in according little weight to Dr. Dye in Muncy's RFC determination and ultimate disability decision.

B

Muncy also cites his own testimony as support for his contention that the ALJ's determination is not supported by substantial evidence. [Pl.'s Mot. Summ. J., R. 9-1 at 4]. The Court construes this as an argument that the ALJ improperly rejected his subjective allegations without a proper credibility determination under 20 C.F.R. § 404.1529. In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, ALJ's employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security

10

Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

    ALJ Rising cited the correct test and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 17].  In rejecting Muncy's testimony, ALJ Rising pointed to a number of direct examples that counter Muncy's representations.  First, contrary to Muncy's characterization of the severity of his back pain and his representation that he is unable to stand or sit longer than five minutes at a time, [Tr. 515], his medical records reveal that his clinical and diagnostic exams, as well

11

as his cervical and lumbar MRIs, have been relatively unremarkable, indicating only mild disc bulging and no documentation of any musculoskeletal abnormality that could be expected to produce the degree of pain alleged. [Tr. 17-18; *see, e.g.*, Tr. 284, 335-36]. Although Muncy claimed to have been prescribed a cane for this back pain by Daniel Boone Clinic, the record does not reveal that any formal prescription was made during the relevant time period. [*See* Tr. 18].

Muncy's testimony regarding the severity of his COPD does not correspond to medical records noting that, aside from intermittent wheezing and diminished expiration, his lungs have been clear to auscultation, his chest x-rays have been normal, and he has experienced a good response to inhaler therapy. [Tr. 18; *see* Tr. 441]. ALJ Rising noted that Muncy has continued his two-pack-a-day smoking habit against the advice of his doctors. [Tr. 18; *see* Tr. 438, 343-44]. It is well established that an ALJ can consider a claimant's reluctance to pursue recommended treatments – such as smoking cessation – in assessing credibility. *E.g.*, *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475 (6th Cir. 1988). Finally, while Muncy alleged that the extent of his mood disorder, anxiety, and inability to focus render him disabled, the ALJ noted that he has received only minimal treatment for his mental conditions, which are related primarily to his physical symptoms and pain. [Tr. 18; *see, e.g.*, Tr. 355, 399].

ALJ Rising's analysis employs the proper test and directly addresses factors that the agency has bound itself to consider. In so doing, ALJ Rising has conducted a proper credibility determination, which the Court's independent review has found to be reasonable and supported by substantial evidence from the record.

III

Accordingly, for the foregoing reasons, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 9] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 14] is **GRANTED**

(3) **JUDGMENT** in favor of the Defendant will be entered

contemporaneously herewith.

This the 24th day of February, 2015.



Signed By:
Gregory F. Van Tatenhove
United States District Judge

13